UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMRY CAPITAL GROUP, Inc.<br><br>Plaintiff,<br><br>-against-<br><br>DKG CAPITAL INC., ACTIVIST INVESTING, LLC AND DAVID LASAR<br><br>Defendants. | Civil Action No. |

**DECLARATION OF MIRO ZECEVIC IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

I, Miro Zecevic, declare as follows pursuant to 28 U.S.C. §1746:

1. I am the owner of Emry Capital Group Inc. ("Plaintiff" or "ECG") which is an affiliate of Mina Mar Corporation, owned jointly by myself and Andrea Zecevic, and whom ECG appointed as its authorized representative.

2. I am fully familiar with, and have personal knowledge of, all the facts and circumstances set forth herein. More specifically, I participated in every aspect of the transaction below including origination, processing and now litigation. I submit this Declaration in support of ECG's Order to Show Cause for a preliminary injunction and temporary restraining order enjoining the Defendant DKG Capital Inc. ("DKG") from transferring or issuing any common or preferred shares of stock, the Control Block or otherwise to the Defendant Activist Investing LLC, ("Activist") or any other third party until further order of the Court.

3. On or about May 14, 2020 DKG, as Seller, and ECG, as Purchaser, entered into Letter of Intent Control Stock and Non-Affiliate Debt Purchase Agreement ("Purchase

Agreement") wherein DKG agreed to sell ECG 12 million common shares of DKG stock for a total purchase price of $35,000.00. A true copy of the Purchase Agreement is attached hereto as Exhibit A.

4. DKG's stock is thinly traded on OTC markets.

5. DKG and ECG agreed that ECG was to acquire a controlling block of common shares, which is why the parties specially agreed to the sale of 12 million shares.

6. Acquiring DKG presented a unique opportunity to ECG that was to yield significant value of an unquantifiable nature.

7. Prior to entering into the Purchase Agreement, ECG and DKG executed a control block change agreement for $80,000.00 in exchange for 12 million shares, on or about April 16, 2019. Shortly thereafter, it was determined that DKG may only be able to sell 10 million shares. Upon further diligence the parties were able to resolve this issue and entered into the Purchase Agreement. Ultimately, the parties agreed to reduce the price from $80,000.00 to $35,000.00 to address additional liabilities and exposure ECG was undertaking at closing. Essentially, this period permitted the parties to complete all necessary diligence and close expeditiously upon entering to into the Purchase Agreement.

8. Pursuant to the Purchase Agreement the parties agreed that the closing would take place on or about May 24, 2020. The parties further agreed that either party was entitled to one extension, provided that such extension does not exceed seven (7) business days. An additional seven (7) day extension was also available to the parties at their option. In other words, the parties had until June 7, 2020 to close, but Activist made it clear it wanted to close on May 24, 2020, which ECG agreed to accommodate.

9. Pursuant to the Purchase Agreement, the requisition date was set to May 21, 2020. ECG and DKG agreed to book entry and close with the issuers transfer agent and to commence the issuance of a insurance bond or other relief.

10. ECG diligently sought to close and for a while DKG cooperated. Namely, ECG sent proposed closing documents on or about May 22, 2020, which included, Board Resolution, Resignation, Convertible Note and Standard Stock Purchase Agreement. ECG also requested DKG's bank information for wiring the $35,000.00 deposit. DKG responded by promising to send the information but never did.

11. While working to close the ninety (90) day cooperation period provided for in Paragraph 6.1 of the Purchase Agreement to cure any material defect was available to the parties if needed.

12. ECG was ready, willing and able to close on May 24, 2020.

13. DKG without justification refused to close on May 24, 2020. At first, DKG asserted it had internal computer issues and that the final documents would be filed and sent over shortly. DKG also asserted that it lost the stock certificates. In this regard, DKG sent an email to ECG on May 27, 2020 stating that it was working to get another, "TA that will accept official letter explanation & small replacement fee." Nothing was mentioned about cancellation.

14. Ultimately on May 28, 2020, DKG notified ECG that it did not wish to proceed and intended to enter into a new purchase agreement.

15. DKG refused to sell because Activist interfered with the Purchase Agreement and offered to pay DKG substantially more money for the stock. ECG estimates the sales price to exceed $75,000.00.

16. Activist only became aware of this transaction because I personally informed Davis Lasar, the owner of Activist, of ECG's intentions with DKG, which forecasted substantial profit for ECG. I was discussing potential deals with Mr. Lasar when this was disclosed.

17. Despite repeated requests by ECG, DKG refuses to honor the Purchase Agreement.  In fact, DKG advised that it intends to fully proceed with the sale of stock to Activist on June 8, 2020.  DKG wrote that, "Given these circumstances our clients [DKG and Activist] will continue to negotiate with each other and intend to reach an agreement shortly for sale of the subject shares". A true copy of DKG's correspondence is attached hereto as Exhibit B.

18. As a result, ECG has suffered significant damages.  Such damages continue to accumulate. Notably ECG has sustained significant damages in pursuing its rights that presently exceed $10,000.00 and will suffer irreparable harm if the relief requested herein is not granted.

19. Every day that DKG refuses to cooperate ECG is harmed. Without the requested relief ECG will be irreparable harmed simply because ECG was to acquire a unique asset pursuant to the Purchase Agreement, thinly traded stock and control of DKG, whose combination with ECG's business would yield synergies that cannot easily be quantified by an award of money damages.

20. For all of the reasons stated herein, and for those set forth in the accompanying Memorandum of Law, I respectfully submit that this Court must grant ECG's application.

21. Pursuant to 28 U.S.C §1746, I declare under penalty of perjury under the laws of the United States of America that foregoing is true and correct

_____
Miro Zecevic

Dated: June 12, 2020